## HARDWICK & SMITH *vs.* WHITFIELD.

In a claim case, an entry that a previous levy was dismissed, by order of the Plaintiff, sufficiently accounts for the levy. The entry might require some explanation in a contest between a third person as a security, for instance, and the Plaintiff in Fi. Fa.

Levy and claim, in Washington Superior Court. Decision made by Judge HOLT, at the December Adjourned Term, 1860.

Sundry writs of *fieri facias,* issued from a Justice's Court of Washington county, against one James D. Paradise, some in favor of Thomas W. Hardwick, and some in favor of Samuel Smith, and some in favor of other persons, were levied on four hundred acres of land in the county of Washington, as the property of said Paradise. Miles Whitfield interposed a claim to the land.

It was recited, both in the claim affidavit and claim bond, that the land had been levied on "by virtue of sundry *fi. fas.,* in favor of Thomas W. Hardwick, Samuel Smith and others;" and it was stipulated in the condition of the bond, that the same was to be void, "should the said Miles Whitfield pay, to said *plaintiffs* in execution, all damages which the jury, on the trial of the right of property, may assess against him, in case it should appear that said claim was made for the purpose of delay."

When the levy and claim were returned to the said Superior Court, an issue was made up between the *"plaintiffs* in execution" and the claimant.

At the March Term, 1859, the case came up for trial, when the counsel for the plaintiffs offered in evidence four *fi. fas.,* issued from the Justice's Court of the 92d District, G. M., of Washington county, in favor of Thomas Hardwick, on each of which *fi. fas.* the following entries appeared, to wit:

"No property to be found by me, whereon to levy the within *fi. fa.;* this July 10th, 1854.

                              "A. P. FORT, Constable."

"Levied the within *fi. fa.* on the crop, and road-wagon,

one rockaway, one yoke of oxen, of John D. Paradise; August 18th, 1854.

his

"ISHAM X WHITE, Constable."

mark.

"Levy on the rockaway, road-wagon and crop dismissed by order of the plaintiff; August 18th, 1854.

his

"ISHAM X WHITE, Constable."

mark.

"Levied the within *fi. fa.* on one set of gin gear, one yoke of oxen, one rockaway, as the property of John D. Paradise; this the 21st Sept., 1854.

"A. P. FORT, Constable."

"The gin gear said not to be subject; the oxen claimed by Allen Jackson; the rockaway claimed by James Rogers; this October 7th, 1854, and levy dismissed by order of the plaintiff, 7th Oct., 1854.      A. P. FORT, Constable."

"Levied the within *fi. fa.* on four hundred acres, more or less, of land, adjoining Thomas W. Harris, D. G. Moye, Isaac Tanner and others, property of John D. Paradise; property pointed out by plaintiff; this August 8th, 1855.

"A. P. FORT, Constable."

The *fi. fas.* were objected to by counsel for the claimant, on the ground that the entries on them raised a presumption of payment. The presiding Judge sustained the objection, and repelled the *fi. fas.*

Counsel for the plaintiffs in *fi. fa.* then proposed to prove by A. P. Fort, the constable who made most of the entries, and by William G. Bryan, the presiding Magistrate of the Court from which the *fi. fas.* issued, and at the time they were issued, that no claim, in the form of an affidavit and bond, had ever been made to the property, mentioned in the entries on the *fi. fas.,* as having been claimed by Jackson and Rogers; and that said levies were dismissed by order of the plaintiff, because it was notorious that the property levied on was not the property of Paradise, but was the property of others who were present, ready to interpose formal claims, in the legal and technical sense of the term; and to explain

how said levies come to be dismissed, and to show that the dismissal of said levies was not, in law, a satisfaction of the *fi. fas.*

The presiding Judge repelled the testimony, upon the ground that such evidence would permit the witnesses to contradict and falsify the record; that the witnesses were not competent to prove how a claim in the Justice's Court was disposed of, but that there should be a record of the Justice's Court to show that a claim case had been tried by a jury impannelled for that purpose, or regularly dismissed.

Plaintiffs' counsel then offered in evidence, the *fi. fas.* in favor of Samuel Smith, which were also levied on the land, and on which there was no other entry except a return of *"nulla bona,"* by A. P. Fort, constable, dated 15th May, 1855.

Upon objection being made to said *fi. fas.*, they were repelled by the presiding Judge, on the ground that the plaintiffs could not proceed with the *fi. fas.* in favor of Smith, under this claim, notwithstanding both plaintiffs were named.

Under these rulings of the presiding Judge, the case was dismissed; whereupon, counsel for the plaintiffs in *fi. fa.* immediately moved to reinstate the case, on the ground that the Court erred in the various decisions before stated.

The Court overruled the motion, and refused to reinstate the case, and said decisions and rulings are all alleged to be erroneous, and a reversal of the judgment asked.

B. D. EVANS, for the plaintiffs in error.

No appearance for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Was the Court wrong in refusing to allow the plaintiffs in *fi. fa.* to explain by the Magistrate and constable the entries on the executions?

This being a contest between the judgment creditors and claimant, no explanation was necessary. The entries themselves sufficiently account for the levies. Were the judgment debtor, or a security complaining of being injured by the act of the officer, the case might be different. But it would be a hard rule, and one productive of no compensa-

Hardwick & Smith vs. Whitfield.

ting benefit, which will not allow the plaintiff to discontinue a levy. which he is convinced was wrongfully or inadvertently made, and which must result in disappointment and defeat.

The presiding Judge acted upon the supposition, that a levy had been made, and a claim interposed by affidavit and bond, and returned to Court in terms of the law. Hence, he ruled that to allow the officers to prove to the contrary, would be "to falsify the record." Where is there any *record* evidence of such a proceeding? The entry of the constable is not a record, so as to import absolute verity. But we are not aware of any principle of law which forbids a mistake in a record to be corrected. If this were so, how many judgments of this and every other Court, authorizing verdicts, judgments, and all other proceedings of Courts of Record to be amended, were erroneously rendered?

But the fact was, no formal claim was put in. The parties were present, asserting their rights to the property; and the plaintiffs being satisfied that it could not be made subject, directed the levy to be dismissed. And this, the evidence which was rejected was intended to establish.

According to the practice of most of the circuits, Smith's *fi. fa.,* to which the objections taken to Hardwick's did not apply, might have proceeded. We understand the rule is different in the Middle District, and, we must say, more conformable to law. To include all the executions in one claim is convenient, but can hardly be justified upon the analogies of the law.

## JUDGMENT.

Whereupon, it is adjudged by the Court, that the Court below be reversed upon the ground that the Court erred in dismissing the case.